UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMAN K. SIYAH MONSOORI

             Plaintiff,          1:17-cv-01161-MAT

      -v-                      **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

## INTRODUCTION

Saman K. Siyah Monsoori ("Plaintiff"), represented by counsel, brings this action under Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL BACKGROUND

On October 1, 2014, Plaintiff protectively filed for SSI, alleging disability beginning October 1, 2014. Administrative Transcript ("T.") 74-75. The claim was initially denied on February 12, 2015, and Plaintiff timely requested a hearing. T. 87-112. On

April 17, 2017, a hearing was conducted in Albany, New York by administrative law judge ("ALJ") John Farrell. T.30-73. Plaintiff appeared with his attorney and testified with the assistance of a translator. An impartial vocational expert ("VE") also testified via telephone.

The ALJ issued an unfavorable decision on May 26, 2017. T. 52-74. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On September 8, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a). T. 14.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of October 1, 2014. T.15.

At step two, the ALJ determined that Plaintiff suffered from the "severe" impairments of lumbar disc herniation, anxiety disorder, major depressive disorder, posttraumatic stress disorder ("PTSD"), and panic disorder. *Id*. The ALJ also determined that Plaintiff's medically determinable impairments of asthma, hypertension, and irritable bowel syndrome were non-severe and

created no significant work-related functional limitations. T. 15-60.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 16. The ALJ stated that he was considering Listings 1.00 (Musculoskeletal Systems), 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders, and 12.15 (Trauma and Stressor-Related Disorders) in making this determination.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following additional limitations: can occasionally balance, kneel, crouch, crawl, stoop, and climb; has no ability to speak or understand English; can perform simple, routine tasks; and can frequently interact with the public and coworkers. T. 17-18.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 23. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of hand packager,

box bender, and production helper. T. 23-24. The ALJ accordingly found that Plaintiff is not disabled as defined in the Act. T. 24.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted because: (1) the ALJ failed to properly evaluate Listing 1.04(A) at step three; (2) the ALJ erred in substituting his own "medical" judgment for that of a physician; and (3) the ALJ failed to develop the record. For the reasons discussed below, the Court finds the ALJ failed to provide adequate analysis for his finding that Plaintiff's lumbar disc herniation did not meet or equal Listing 1.04(A). Accordingly, the Court finds that remand of this matter for further administrative proceedings is required.

**I.    Failure to Properly Consider Medical Listing 1.04(A)**

**A.    Medical Evidence Pertaining to Listing 1.04(A)**

Plaintiff reported that he was seriously injured in a car bombing and shooting in his home country of Iraq in 2008. One of his sons was killed in the attack. Following the attack, he had surgeries in Iran and Iraq for his injuries. Since the attack, he has suffered from PTSD, chronic back pain and headaches. Plaintiff moved to Buffalo in June 2014, and established medical treatment shortly thereafter at Jericho Road Community Health Center. T. 276-77.

On February 9, 2015, a musculoskeletal examination of Plaintiff's spine showed a limited range of motion with pain and a positive straight leg raising test on the left side. T. 265. Plaintiff was seen again for his back pain on March 10, 2015, where

he exhibited a limited range of motion and was referred to a specialist. T. 261-62. On March 27, 2015, Plaintiff walked with a stumbling and uncoordinated gait. He had tenderness of the paraspinal muscles bilaterally and decreased muscle tone on the left side. He had tenderness of the left L2, L3, L4 and L5 paravertebral facet area. T. 258. Plaintiff continued to be treated at Jericho Road Community Health Center for his neck, back and leg pain, as well as other medical issues, throughout 2015 and 2016. *See* T. 228-78.

On December 22, 2016, Plaintiff was admitted to the emergency room with complaints of chronic lower back pain. Upon examination, Plaintiff exhibited pain with palpation. A straight leg raising test was positive on the left side at ten degrees. T. 301-03. Radiology reports showed mild wedging at T11 and T12, mild disc space narrowing at L5/S1, mild generalized posterior facet arthrosis, straightening lumbar lordosis, and transitional lumbosacral anatomy. T. 303.

Plaintiff was referred to orthopedic surgeon Dr. Christopher Hamill, who first examined him on January 24, 2017. Upon examination, Plaintiff had an absent left Achilles reflex, foot drop on the left, and reduced strength in the extensor hallucis longus (EHL) muscle and anterior tibial tendon. T. 343.

An MRI of the lumbar spine taken on February 24, 2017 showed loss of normal T2 hyperintensity within the L4-5 intervertebral

discs consistent with disc desiccation and mild disc space narrowing at L4-5. A left paracentral disc herniation was present at L5-S1, with extruded disc material extending into the left lateral recess, abutting and compressing the exiting L5 nerve root. T. 339. On March 15, 2017, Plaintiff discussed the findings of the MRI with Dr. Hamill, who noted the disc herniation on the left side at L4-5 and reported a positive straight leg raising test on the left side. After going over the options with Dr. Hamill, Plaintiff expressed he would like to move forward with an L4-5 discectomy. T. 346-47.

In his decision, the ALJ noted the February 2017 MRI findings and physical exams showing an absent left Achilles reflex, left foot drop and decreased strength at the left lower extremity, as well as Dr. Hamill's suggestion of an L4-5 discectomy and intermittent straight leg raises. T. 19-20. Nevertheless, the ALJ determined there were "no objective findings sufficient to meet [the applicable] Listings" and further found that Plaintiff was capable of a limited range of medium work. T. 16-17.

Plaintiff argues that although the ALJ provided a summary of the medical record in his decision, he failed to properly weigh all of the evidence of record and provide a detailed explanation of his findings. For the reasons set forth below, the Court finds the ALJ failed to address ambiguities in the record that specifically

relate to Listing 1.04(A) and further erred by failing to demonstrate he actually considered Listing 1.04(A).

## B. Ambiguities in the Record Require Remand for Proper Consideration of Listing 1.04(A)

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). "The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *Id.* (citing 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which ... is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.")) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.920(d).

The claimant bears the burden at step three to prove he or she meets the requirements necessary to meet or equal the Listings. Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp.2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Notably, it is the ALJ's responsibility to "build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp.2d 133, 142

(N.D.N.Y. 2012). "While the ALJ may ultimately find that [a considered listing] do[es] not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria." *Critoph v. Berryhill*, No. 1:16-CV-00417(MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting *Peach v. Colvin*, No. 15-CV-104S, 2016 WL 2956230, at *4 (W.D.N.Y. May 23, 2016)). Failure to do so may warrant remand. *See, e.g., Torres v. Colvin*, No. 14-CV-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) (remanding where "the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A)" but the ALJ's "only reference to it is a recitation of the standard"); *Cherico v. Colvin*, No. 12 Civ. 5734(MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (holding that an ALJ merely stating that he or she had considered the requirements of a listing was "patently inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)" and that where there is record support for each of the necessary symptoms, the ALJ was required to address that evidence, and his failure to specifically do so was error that would justify a remand).

While the ALJ found Plaintiff's lumbar disc herniation was a severe impairment at step two, (T. 15), at step three he stated that there were no objective findings sufficient to meet the criteria in the applicable sections of Listing § 1.00. T. 16. Other

than providing a selective summary of the evidence later in the decision, the ALJ failed to provide any specific rationale showing that the medical evidence of record does not meeting Listing 1.04(A). Moreover, it is impossible to know whether the ALJ specifically considered Listing 1.04(A), given the ALJ referenced only the general Listing of 1.00, which encompasses all musculoskeletal systems. Furthermore, the Court's review of the record reveals there is evidence suggesting Plaintiff may in fact meet the Listing and accordingly, a more thorough analysis and explanation was required. *Cherico*, 2014 WL 3939036, at *28.

To meet Listing 1.04(A), a claimant must show proof of the following conditions:

1. A disorder of the spine, including but not limited to "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture," and

2. "Compromise of nerve root (including the cauda equina) or the spinal cord," and

3. "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)," and

4.  "Sensory or reflex loss," and if there is involvement of the lower back,

5.  "Positive straight-leg raising test" in both the sitting and supine position.

The Social Security Administration ("SSA") has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ("AR") issued in 2015. *See* AR 15-1(4), *Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression*, 80 F.R. 57418-02 (2015), 2015 WL 5564523(F.R.). While these rulings do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. *See Auer v. Robbins*, 519 U.S. 452, 462-63 (1997). In its AR, the SSA specified that all of the requirements of Listing 1.04(A) must be simultaneously present on examination and continue, or be expected to continue, for at least 12 months, in order for a disorder of the spine to meet the Listing at step three. F.R. 57418-02, at *57420. In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.*

While the Court notes that the AR was issued in response to the Fourth Circuit's holding in *Radford v. Colvin*, 734 F.3d 288

(4th Cir. 2013), that plaintiff could meet Listing 1.04(A) even though his relevant symptoms were not always simultaneously present, the Second Circuit has not made a similar holding. Accordingly, this Court will accord the policy position set forth in AR 15-1(4) substantial deference. *See Smith v. Colvin*, No. 2:15-CV-00107-AA, 2016 WL 8711697, at *3-4 (D. Or. Feb. 5, 2016) (according substantial deference to AR 15-1(4)); *Atkins v. Colvin*, No. 15-1168-JWL, 2016 WL 2989393, at *10-12 (D. Kan. May 24, 2016) (applying the policy position set forth in AR 15-1(4) rather than the Fourth's Circuit's holding in *Radford*).

Where, as here, a claimant alleges that he meets Listing 1.04(A) based on a lower back injury, disorder, or condition, he must meet all five criteria included in that listing. Pursuant to AR 15-1(4), the claimant must also demonstrate that all five criteria were met simultaneously and for the necessary duration. Furthermore, there must be evidence that straight-leg raising tests were positive in both the sitting and supine positions.

Consultative examiners typically assess all of the components necessary to meet Listing 1.04(A), namely, distribution of pain, limited range of motion, motor loss, reflex or sensory loss, and straight leg raising tests, in addition to reviewing or ordering diagnostic testing, if appropriate, which would show the compromise of a nerve root or evidence of nerve root compression. Notably, there is no physical consultative examination in the record.

However, Plaintiff's medical records appear to contain references to all of the separate components necessary to meet the Listing, over the course of approximately three months, between December 22, 2016 and February 24, 2017. *See, e.g.,* T. 301-03 (Plaintiff reported decreased movement in his lower extremity with severe, chronic pain that worsened with movement of the left lower extremity and ambulation; an exam revealed pain with palpation to left lower paraspinal muscles and a positive straight leg raising test on the left side.); T. 342 (Plaintiff reported pain in his lower back and left leg was at a nine on a scale of one to ten; Plaintiff reported weakness in his left foot; an exam revealed a foot drop on his left side and diminished strength in the EHL tendon and the anterior tibial tendon.); T. 339 (An MRI of Plaintiff's lumbar spine revealed left paracentral disk herniation with extruded disk material extending to the left lateral recess, abutting and compressing the exiting 5 nerve root, with mild bilateral neural foraminal narrowing.).

Here, the record evidence suggests that Plaintiff's symptoms could meet the requirements in Listing 1.04(A). However, the ALJ did not refer to the Listing specifically; therefore the Court cannot determine whether the ALJ properly considered it. Furthermore, it is not the function of the Court or the Commissioner's counsel to weigh the medical evidence of record to determine whether Listing 1.04(A) was indeed met. *See Schaal v.*

*Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("It is not our function to determine *de novo* whether plaintiff is disabled.") (internal quotation marks omitted); *Abramaitys v. Berryhill*, No. 1:16-cv-00660(MAT), 2017 WL 4456700, at *3 (W.D.N.Y. Oct. 6, 2017) ("it is not the function of this Court to weigh the medical evidence and determine if plaintiff meets the listing requirements. It is the Commissioner's function to make that determination and, in this case, the ALJ failed to do so in a manner that allows for meaningful review.").

The Commissioner argues that there was no error, because Plaintiff had the burden of proving his back impairment met or equaled the requirements of Listing 1.04(A), but failed to establish that he satisfied all of the required medical criteria. Specifically, the Commissioner argues that the findings that could satisfy some of the criteria in Listing 1.04(A) were scattered over time and were not all present for more than one year, as required to meet the Listing. Therefore, the Commissioner suggests, any error by the ALJ at step three was harmless. The Court disagrees.

As a threshold matter, the regulations and the Commissioner's AR do not require that the durational requirement of twelve consecutive months have already taken place, as the Commissioner implies in her argument. Instead, they "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909; *see also* F.R. 57418-02, at *57420. Plaintiff's

treatment records demonstrate ongoing back issues from the time he initiated medical treatment in Buffalo in 2014 through March 2017, one month prior to his hearing. It is evident from the record that Plaintiff's treatment is ongoing, as he indicated to Dr. Hamill in March 2017 that he would like to move forward with surgery. T. 346-47. Furthermore, as discussed above, the ALJ failed to make any specific findings or reference to the requirements of Listing 1.04(A), including whether Plaintiff met the durational requirement. Accordingly, the Court finds no merit to the Commissioner's *post hoc* rationale on the matter.

Insofar as the Commissioner argues Plaintiff failed to demonstrate he met the simultaneous requirement and the straight leg raising test position requirement of the Listing, the Court finds these are ambiguities in the record that necessitate remand.

As discussed above, the record demonstrates Plaintiff had been receiving treatment for ongoing back issues from his primary care office since 2014. However, Plaintiff was not referred to Dr. Hamill until early 2017 after he was admitted to the emergency room for severe back pain, and it is unclear from the record whether Plaintiff's other treating sources ever simultaneously tested all of the physical conditions required to meet Listing 1.04(A). And a physical consultative examination, which would have tested all of the necessary physical conditions, was never ordered or administered. Furthermore, the treatment records that indicate

Plaintiff had positive straight leg raising tests fail to state whether the tests were administered in both the sitting and supine positions, as required by the Listing.

As part of their regulatory obligation to develop the administrative record fully, ALJs generally must seek clarification where there is a significant ambiguity or inconsistency in the record. *See e.g., Rolon v. Comm'r of Soc. Sec.,* 994 F. Supp.2d 496, 504 (S.D.N.Y. 2014) ("A perceived internal inconsistency about a critical finding is a 'conflict or ambiguity' which requires the ALJ to further develop the record by 'seek[ing] additional evidence or clarification' from the treating physician.") (quoting 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)[1] (eff. until Mar. 26, 2017)). "Since an ALJ's duty to seek clarification applies only to a conflict or ambiguity that must be resolved to make the disability determination, minor or irrelevant inconsistencies do not require an ALJ to act upon the duty to further develop the record." *Id*. at 505.

Plaintiff has made at least a colorable case that he meets the requirements of Listing 1.04(A) and thus, the ambiguities noted above are critical to a finding of disability. Because clarification of the record is needed on these points, the Court

---

[1]These subsections were omitted from the new versions of the regulations effective March 27, 2017; the new versions of Sections 404.1512 and 416.912 do not contain this language. The former versions of these regulations apply to Plaintiff's claim.

will remand this matter for further administrative proceedings. *See Torres*, 2015 WL 4604000, at \*4; *Rowe v. Berryhill*, No. 1:17-cv-00208-MAT, 2018 WL 4233702, at \*3 (W.D.N.Y. Sept. 6, 2018) (remanding where ALJ failed at step three to discuss Plaintiff's medical records as they pertained to Listing 1.04(A), preventing the Court from performing a meaningful review); *Morales v. Berryhill*, No. 6:17-cv-06836-MAT, 2019 WL 1076088, at \*4 (W.D.N.Y. Mar. 7, 2019) (remanding for proper evaluation of Listing 1.04(A), including re-contacting plaintiff's treating sources to determine the position or positions of straight leg raising tests). On remand, the ALJ shall perform a proper evaluation of the medical evidence as it pertains to Listing 1.04(A), including re-contacting Plaintiff's medical providers who reported positive straight leg raising tests to determine the position or positions in which they were performed. A consultative examination should also be ordered to determine if all five components of Listing 1.04(A) were met simultaneously and have, or are expected to meet the durational requirement of twelve months.

## II.  **Failure to Develop the Record**

Plaintiff also argues the ALJ failed to properly develop the record when he made no attempt after the hearing to obtain treatment notes from Plaintiff's mental health providers at Lake Shore Behavioral Health, despite being alerted by Plaintiff's attorney at the hearing that Lake Shore Behavioral Health had

failed to provide the requested records. Notably, the record indicates Plaintiff had been treated at Lake Shore Behavioral Health bi-weekly for his PTSD, adjustment disorder with mixed anxiety, and traumatic brain injury diagnoses since July 2014. T. 207.

The error at step three, discussed above, is a sufficient basis for reversal of the Commissioner's decision and remand for further proceedings. Accordingly, the Court need not fully address Plaintiff's argument regarding the ALJ's failure to develop the record. However, the Court recognizes that the treatment records from Lake Shore Behavioral Health may provide substantial evidence regarding Plaintiff's mental limitations, and thus, on remand, the ALJ is further instructed to subpoena the treatment records from Lake Shore Behavioral Health.

## III. Plaintiff's Remaining Argument

Plaintiff further argues that the ALJ erred in substituting his own "medical" judgment for that of a physician. Because the ALJ will need to perform a new sequential evaluation on remand, the Court need not address Plaintiff's remaining argument, which concerns later steps in the evaluation.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 13) is granted to the extent that this matter is remanded to the Commissioner for further administrative

proceedings consistent with this Decision and Order. The Commissioner's opposing motion for judgment on the pleadings (Doc. 15) is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     June 4, 2019
           Rochester, New York